■Parley, J.
(dissenting). The ruling ;by the majority places an interpretation on section 245.00 that permits a person to appear in public completely exposed so long as he or she does not simultaneously act in a lewd manner. Thus, the “ streakers ” of today may be the complacent unadorned “strollers” of tomorrow, for whom our schools, streets, beaches, parks, and other public facilities, become a stage for display of their form, of exhibitionism at the expense of others who are compelled to be a captive audience. Uninhibited by law and unconcerned for the rights of others, these individuals are allowed to foist upon society their peculiar idiosyncrasies and standards of indecency despite the fact that infringement of the rights of others by offensive conduct is not protected by the constitutional guarantee of freedom of expression.
The problem presented by the majority ruling is not novel. In 1934, the former section 1140 from which 245.00 is derived, was similarly construed in People v. Burke (243 App. Div. 83, affd. 267 N. Y. 571). This decision prompted the Legislature in the following year to enact section 1140-b which omitted the phrase “ in a lewd manner ’ ’ while prohibiting the public exposure of a person’s private parts in the presence of two or more persons of the opposite sex' similarly exposed. This statute was aimed at outlawing the public practice of nudism (see *1094 Matter of Excelsior Pictures Corp. v. Regents of Univ. of State of N. Y., 3 N Y 2d 237, 243-245), and recognized the existence of public standards of common decency. While article 245 of the revised Penal Law relating to offenses against public sensibilities did not carry over the same language as old section 1140-b, it may not be assumed the Legislature thereby intended to lower the standards of decency. The intent to preserve decency, rather than challenge it, would seem apparent upon a comparison of section 245 and its companion section, 245.01, which reads as follows: “A female is guilty of exposure when, in a public place she appears clothed or costumed in such a manner that the portion of her breast below the top of the areola is not covered with a fully opaque covering. This subdivision shall not apply to any female entertaining or performing in a play, exhibition, show or entertainment.”
A reading of the last-mentioned statute compels the assumption that bottomless exposure must likewise be prohibited, and that intentional exposure of the private or intimate parts of the body in public places is itself lewd. To hold otherwise is to infer the Legislature has less decency than the aborigines who wear loin cloths. The majority, however, has found no prohibition actually exists against nudity itself. In People v. Price (33 N Y 2d 831) the Court of Appeals was presented with the case of a female who was charged with violating 245.01 by wearing in public a fishnet pullover through the openings of which the areola portions of her breast were visible. The court, in overturning her conviction, found the statute was only aimed at the problem created by “ topless waitresses,” and did not apply to noncommercial exposure. This ruling achieved a semblance of consistency between the two sections, as it would be awkward to find the one prohibited a female from publicly appearing bare breasted while the other allowed her to be totally nude. The case leaves unanswered the reason for the discriminatory practice directed at waitresses who, at work, must at least keep their breasts covered, while other females, including their customers, are not so restricted.
I would accord a common sense meaning to section 245.00 to accomplish the reasonable object of the statute which is to preserve public decency.
Accordingly, I dissent and vote to affirm the conviction.